[File No. 6295.]

GRAND FORKS COUNTY, a Municipal Corporation and P. M. C. Hjelmstad, I. H. Jeglum, John E. Nuss, A. O. Trageton and R. E. Hatt, as Commissioners of Grand Forks County, North Dakota, Appellants, v. WARD COUNTY, a Municipal Corporation and Bertle Jacobsen, C. M. Christianson, August Krantz, Louis Rubbleke and Robert L. Larkin, as Commissioners of Ward County, North Dakota, Respondents.

(256 N. W. 411.)

Opinion filed September 21, 1934.

*W. B. Arnold,* State's Attorney, *J. B. Wineman,* Assistant State's Attorney and *J. M. West,* for appellants.

*Robert W. Palda,* State's Attorney and *C. E. Brace,* Assistant State's Attorney, for respondents.

BURR, Ch. J. This is an action to determine responsibility for support of an indigent woman and her children.

The facts were stipulated and as stipulated were incorporated by the court in its findings of fact.

The trial court found that the woman and her children had a legal settlement in Grand Forks county and that county was liable for their support. From the judgment entered the plaintiff appeals.

In 1910 one E. C. Widgers was committed to the state hospital for the insane in Fergus Falls, Minnesota. Shortly thereafter he was re-

leased, but in January 1912 was "re-committed by order of the probate court" and he remained in the institution until April, 1912, when he escaped. Not being found thereafter "he was discharged from the institution on the 8th day of May, 1915."

Widgers came to the city of Grand Forks some time in 1915. He claimed to be a resident of Grand Forks and from that time until shortly before his death he lived in a house boat which from time to time was moored on either shore of the Red River, as suited his convenience. When he died he was an inmate of the Grand Forks county poor farm.

Joyce Bachman was a resident of Ward county prior to June 1931 and was being supported by Ward county at that time. On June 8, 1931 she married Widgers in Crookston, Minnesota, and lived with him until the time of his death. After his death she was sent back and forth between Ward county and Grand Forks county—the officials of each county claiming the other county was responsible for her support.

In October, 1931, a complaint was filed in the office of C. B. Davis, a justice of the peace, alleging that this Joyce Bachman Widgers was not a resident of Ward county but had a legal settlement in Grand Forks county and asking him for an order requiring her to be conveyed to Grand Forks. Judgment was entered in the matter; she was taken to Grand Forks, delivered to the overseer of the poor in the city of Grand Forks, a copy of the warrant mailed to the president of the city commission of Grand Forks, and no appeal was ever taken from such order.

Grand Forks county returned her to Ward county and in April, 1932, another complaint was laid before the same justice Davis. Again judgment was entered requiring the woman and her children to be delivered to the overseer of the poor in Grand Forks county. No appeal was taken by the county of Grand Forks or the city of Grand Forks or by the overseer of the poor. Grand Forks county took similar proceedings in the meantime. Upon her return to Grand Forks county she was placed in the county poor farm in Grand Forks county "pending the outcome of litigation in the nature of equitable action for an injunction to prevent Grand Forks county" from returning her to Ward county.

The real issue involved is whether from 1915 and until the time of his death E. C. Widgers was a resident of Grand Forks county.

It is the contention of the plaintiff that in 1915 Widgers was incompetent to establish a legal residence in Grand Forks county being an escaped insane person.

This is a contest between two counties in North Dakota. From 1915 on Widgers claimed to be a resident of Grand Forks county and later he was supported by Grand Forks county. He may have been · originally a resident of Minnesota. The findings are silent in this respect. The record is also silent as to whether he was cured at the time he "escaped" from the asylum in Fergus Falls. Appellant says the presumption is that insanity continues. However, he was married by authorities in Minnesota and we assume he was competent to contract marriage. He had lived in Grand Forks for fifteen years prior to that time. Grand Forks county did not return him to Minnesota. Upon their marriage his wife took up her residence with him and continued to live where he had been living prior to the marriage, and under the same circumstances.

Under the statute, § 14, subd. 5, the residence of the husband is presumptively the residence of the wife. Thus, by her marriage she became a resident of Grand Forks county. Upon the death of her husband, if not before, she became an indigent person entitled to support. Under the law in effect at that time, Comp. Laws 1913, § 2501, "the residence of a married woman follows that of her husband if he has any within the state" in all matters dealing with the relief of the poor. Her residence remained there unless she acquired a legal settlement elsewhere. The findings show that she did not thereafter remain in Ward county a sufficient length of time to establish a legal settlement there. She was promptly returned to Grand Forks county and has been shunted back and forth ever since until by stipulation Grand Forks county supported her, subject to a decision as to its liability.

We need not determine the effect of the failure to appeal from the decision of Justice Davis. The court found her legal settlement to be in Grand Forks county. The record sustains this finding and so the judgment is affirmed.

Burke, Nuessle, Moellring and Christianson, JJ., concur.